**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

UNITED STATES OF AMERICA,

Plaintiff,

v.

MALACHI YOUNG,

Defendant.

Case No. 25-CR-20628

Honorable Denise Page Hood

**ORDER DENYING DEFENDANT MALACHI YOUNG'S MOTION TO REVOKE ORDER OF PRETRIAL DETENTION [ECF No. 20]**

## I. INTRODUCTION

Before the Court is Defendant Malachi Young's motion to revoke order of pretrial detention. [ECF No. 20]. The motion is fully briefed. A hearing was held on December 11, 2025. For the reasons set forth below and stated on the record, the motion is DENIED.[1]

## II. BACKGROUND

---

[1] At the hearing on December 11, 2025, the Court indicated that a written order would follow its ruling on the record. Defendant later filed a renewed motion to revoke the order of pretrial detention, which the Court granted at the hearing on August 17, 2026.

On August 4, 2024, a criminal complaint was filed alleging that Defendant Malachi Young ("Defendant" or "Young") knowingly possessed ammunition that had previously traveled in and affected interstate commerce, in violation of Title 18, United States Code, Section 922(g)(1). [ECF No. 1, PageID.8]. According to the criminal complaint, on May 31, 2024, at approximately 1:21 a.m., Detroit Police Department ("DPD") officers responded to a non-fatal shooting. [ECF No. 1, PageID.4]. DPD officers were flagged down by the victim ("V1") in the area of Plymouth and Asbury Park in Detroit, Michigan. *Id*. V1 identified herself as an Uber driver and reported that she was going to pick up a rider at 11401 Hubbell Ave. *Id*. When she arrived at the pickup location, it appeared that two unknown males were shooting at each other. *Id*. V1 said shots were coming from a silver SUV, but V1 was unsure of the make or model. *Id*. V1 immediately drove away onto Plymouth Avenue until she located police. *Id*. DPD officers documented seventeen holes in V1's Nissan Rogue caused by suspected gunfire. *Id*. DPD officers also observed a gunshot wound to V1's triceps area. *Id*. V1 was subsequently transported to a hospital for treatment of a gunshot wound. *Id*.

DPD officers responded to 11401 Hubbell to investigate further. During their investigation, DPD evidence technicians located fired cartridge casings ("FCCs") of multiple calibers around 11401 Hubbell. The FCCs found at the scene were: (1) five .223 Remington FCCs; (2) nine 9-millimeter Luger FCCs; and (3) ten 7.62x39

FCCs. [*Id*. at PageID.4-5]. While DPD officers were at the hospital with V1, nurses informed them that a second gunshot victim, later identified as Young, had arrived by private transportation shortly before V1. [*Id*. at PageID.5].

On August 11, 2025, Young was arrested for the alleged criminal violation and appeared before Magistrate Judge Altman. [ECF Nos. 3, 10]. That same day, Magistrate Judge Altman ordered the temporary detention of Young and scheduled a detention hearing. [ECF No. 7]. On August 13, 2025, Magistrate Judge Altman presided over Young's detention hearing and issued an order of detention pending trial. [ECF No. 11]. The Court found that Young should be detained because the Government had shown "[b]y clear and convincing evidence that no condition or combination of conditions could reasonably assure the safety of the community" and "[b]y a preponderance of the evidence that no condition or combination of conditions of release will reasonably assure the defendant's appearance as required." [ECF No. 11, PageID.21]. On August 21, 2025, Young was charged in a one-count grand jury indictment alleging that on or about May 31, 2024, Young, knowing that he had been convicted of a crime punishable by imprisonment for a term exceeding one year, knowingly possessed, in and affecting interstate commerce, ammunition in violation of 18 U.S.C. § 922(g)(1). [ECF No. 12].

On November 14, 2025, Young filed a motion to revoke order of pretrial detention. [ECF No. 20]. The Government filed a response in opposition on November 26, 2025. [ECF No. 25]. A hearing was held on December 11, 2025.

## III. APPLICABLE LAW

The review of detention orders is governed by the Bail Reform Act ("BRA"), which provides in relevant part: "[i]f a person is ordered detained by a magistrate judge . . . that person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." 18 U.S.C. § 3145(b). Although the text of the BRA is silent on the applicable standard of review, this Court routinely conducts *de novo* review. *United States v. Bartlett*, 731 F. Supp. 3d 836, 850 (E.D. Mich. 2024); *see, e.g.*, *United States v. Koubritti*, 2001 U.S. Dist. LEXIS 19823, 2001 WL 1525270, at *5 (E.D. Mich. Oct. 16, 2001) ("District courts within the Sixth Circuit appear to adhere to a requirement of *de novo* review."); *United States v. Didani*, No. 21-20264, 2022 U.S. Dist. LEXIS 125979, 2022 WL 2794284, at *2 (E.D. Mich. July 15, 2022); *United States v. Gray*, No. 21-CR-20516, 2021 U.S. Dist. LEXIS 212169, 2021 WL 5114574, at *1 (E.D. Mich. Nov. 3, 2021).

"The default position of the law . . . is that a defendant should be released pending trial." *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010). To apply

this default rule and release a defendant, the court must be reasonably assured that he will appear at the next court date and will not pose a danger to others. *United States v. Tawfik*, 852 F. App'x 965 (6th Cir. 2021). It is the Government's burden to "prove risk of flight by a preponderance of the evidence, and it must prove dangerousness to any other person or the community by clear and convincing evidence." *United States v. Hinton*, 113 F. App'x 76, 77 (6th Cir. 2004). To determine whether the Government has met its burden, the district court must consider the following factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger posed by the person's release. 18 U.S.C. § 3142(g). The court must order detention if, after a hearing, it concludes "that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community . . ." 18 U.S.C. § 3142(e).

## IV. ANALYSIS

a. Factors to Be Considered Under § 3142(g)

1. Nature and Circumstances of the Offense

The first BRA factor is the "nature and circumstances of the offense charged, including whether the offense . . . involves a firearm[.]" 18 U.S.C. § 3142(g)(1). In support of his motion for pretrial release, Young argues that he is not charged in this

matter with possession of a firearm. [ECF No. 20, PageID.8]. Rather, Young is charged under 18 U.S.C. § 922(g)(1) with being a felon in possession of ammunition. [ECF No. 12, PageID.23]. Young relies on *United States v. Hardon*, No. 98-1625, 1998 U.S. App. LEXIS 12180, at *2-3 (6th Cir. June 4, 1998), in which the Sixth Circuit held that possession of a firearm and ammunition by a felon is not a crime of violence for purposes of the Bail Reform Act. [ECF No. 20, PageID.83]. Young therefore argues that his alleged possession of a single spent casing posed no danger to the community. *Id*.

The Government responds that the alleged offense involves significantly more than the possession of ammunition. [ECF No. 25, PageID.107]. The Government alleges that Young was involved in a shootout during which an innocent Uber driver was caught in the crossfire and shot. *Id*. Young arrived at the hospital with a spent casing in his pocket, which the Government argues supports an inference that Young fired the shot that produced the casing. *Id*. The Government further argues that witnesses reported that the shots came from a gray SUV, the same type of vehicle in which Young arrived at the hospital. *Id*. Finally, the Government asserts that the casing recovered from Young's pocket was linked to eight other shootings, including one that occurred two days earlier and four that occurred during the same month. [*Id*. at PageID.108].

The Court finds that this factor weighs against release. Young is not charged with a crime of violence or with possession of a firearm, and the charged offense does not carry a presumption of detention. That does not, however, preclude the Court from considering the circumstances surrounding the offense under § 3142(g)(1). The Court finds those circumstances to be serious. The spent casing was recovered from Young's pocket after he arrived at the hospital with a gunshot wound shortly after the shooting in which an innocent bystander was shot. The Government also proffers that the casing recovered from Young's pocket generated NIBIN leads linking it to eight other shootings, including one that occurred two days earlier and four that occurred during the same month. These circumstances distinguish this case from one involving the mere possession of ammunition by a felon. Accordingly, the Court finds that the nature and circumstances of the offense weigh against release.

2. Weight of the Evidence of Dangerousness

"This factor goes to the weight of evidence of dangerousness and risk of nonappearance, not the weight of evidence of his guilt." *Stone*, 608 F.3d at 948 (citing *United States v. Hazime*, 762 F.2d 34, 37 (6th Cir. 1985)).

Young argues that the instant offense does not demonstrate that he poses a danger or flight risk. [ECF No. 20, PageID.84]. As noted above, Young argues that possession of ammunition by a felon is not a crime of violence, and that the alleged

possession of a spent shell casing did not pose any danger to the community. [*Id*. at PageID.83].

The Government, however, argues that the weight of the evidence of Young's dangerousness is supported by police reports, MDOC PSRs, and Young's convictions. [ECF No. 25, PageID.108].

Regarding the risk of nonappearance, the Pretrial Services Report states that Young denied possessing a passport or Michigan enhanced identification, which was verified by the Michigan Secretary of State via LEIN. Young also denied a history of foreign travel, which was corroborated by his mother.

The Court finds this factor weighs in favor of detention. As to dangerousness, the circumstances surrounding the charged offense provide some evidence supporting an inference that Young possessed and discharged a firearm during the shooting, notwithstanding that he is charged only with possession of ammunition. As to the risk of nonappearance, Young has failed to appear for multiple court proceedings, including a probation violation hearing and sentencing. Additionally, Young's criminal record reflects two convictions for fleeing a police officer. Despite the absence of a passport, enhanced identification, or history of foreign travel, the Court finds that Young poses a risk of nonappearance based on his prior failures to adhere to court orders and his demonstrated disregard for law enforcement commands.

3. History and Characteristics of the Person

The third factor involves weighing "the history and characteristics of the person," including his family ties, employment, community ties, length of residence in the community, past conduct, and criminal history. 18 U.S.C. § 3142(g)(3).

Young acknowledges that his prior criminal record includes: (1) a 2023 misdemeanor conviction for controlled substance use; (2) a 2024 felony conviction for larceny of $20,000 or more; and (3) a 2024 felony conviction for attempt possession of burglar's tools. [ECF No. 20, PageID.84]. Young, however, asserts that he is 21 years old and a lifelong resident of the Detroit area with significant family ties there. *Id*. Young asserts that his mother has agreed to be his third-party custodian if he is granted release. *Id*. Further, Young contends that, as indicated in the Pretrial Services Report, he maintained gainful employment from 2022 through 2024 and believes he will be able to obtain employment if released. [*Id*. at PageID.84-85].

The Government argues that, between January 2022 and February 2024, Young was repeatedly found with firearms, engaged in violent conduct, or fled from police in a dangerous manner. [ECF No. 25, PageID.108]. The Government asserts that the instant shooting occurred in May 2024, and one month later, Young was involved in another shooting. *Id*. The Government asserts that although Young was acquitted in connection with the second shooting, his co-defendant pleaded guilty to robbing that victim with a gun, and Young admitted to firing shots at the victim. *Id*.

The Government argues that even if Young acted in self-defense, he still unlawfully possessed a gun and used it to shoot at someone. [*Id*. at PageID.108-109].

Additionally, the Government argues that Young's acquitted and uncharged conduct should be considered in evaluating his dangerousness. [*Id*. at PageID.109]. The Government contends that Young's uncharged conduct is memorialized in police reports, the veracity of which Young has not challenged. *Id*.

The history and characteristics factor weighs against release. This Court has previously stated that, in analyzing dangerousness under 18 U.S.C. § 3142(g), courts may consider uncharged conduct. *See United States v. Sanders*, 466 F. Supp. 3d 779, 786 (E.D. Mich. 2020) (alterations added) ("[T]he Court also considers . . . conduct [that] did not result in criminal charges."); *United States v. Brown*, No. 22-383, 2022 U.S. Dist. LEXIS 188608, 2022 WL 10080824, at *3 (N.D. Ill. Oct. 17, 2022) (alteration added) (citation omitted) ("[E]vidence of uncharged conduct may be considered at a detention hearing, as long as it is properly evaluated and weighed."). The Court has reviewed the uncharged and acquitted conduct identified by the Government and has afforded that conduct appropriate weight in light of the circumstances surrounding each incident. The Court does not rely on the mere fact of an arrest or charge, or Young's prior prosecution for conduct resulting in an acquittal, as evidence of Young's dangerousness. Rather, the Court considers the underlying conduct only to the extent that it is supported by the record and relevant

to the § 3142(g) factors. Here, although the Court finds that Young has strong ties to the community and that his mother is likely a suitable third-party custodian, Young's past conduct and criminal history remain concerning. As discussed above, Young has failed to appear for court proceedings, including a probation violation hearing and sentencing, and has twice been convicted of fleeing a police officer. This history raises concerns regarding Young's willingness to comply with court orders and abide by conditions of release.

4. Nature and Seriousness of the Danger to the Public

The fourth and final factor is "the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g)(4).

Young argues that his release would not pose a danger to the community. He contends that his prior criminal convictions were for drug and larceny offenses. [*Id.* at PageID.85]. Young argues that if granted bond subject to the conditions recommended by Pretrial Services, any concerns regarding danger to the community would be amply mitigated. *Id.*

The Government argues that Young has at least six failures to appear, including absconding from a sentencing hearing and failing to appear as recently as May 2024, and has repeatedly failed to abide by conditions of court-ordered supervision. [ECF

No. 25, PageID.110]. The Government therefore argues that Young will likely not abide by this Court's orders to appear for proceedings. *Id*. The Government contends that no conditions of release will ensure the safety of the community. *Id*. The Government argues that a tether will not prevent Young from engaging in criminal activity but merely help law enforcement locate him if he does. *Id*. Further, the Government argues that a third-party custodian will not curb the danger that Young poses to the community, especially because the proposed custodian is Young's mother. [*Id*. at PageID.110-111].

The Pretrial Services Report states that Young poses a risk of nonappearance for the following reasons: (1) Substance Abuse History; (2) Criminal History Including Record of History of Failure to Appear; (3) Criminal Activity while under Supervision; (4) History of Failure to Appear; (5) Pretrial, Probation, Parole, or Supervised Release Status and Compliance. The Pretrial Services Report also states that Young poses a risk of danger for the following reasons: (1) Nature of Instant Offense; (2) Prior Arrests and Convictions; (3) Substance Abuse History; (4) Violent Behavior History; (5) Pretrial, Probation, Parole, or Supervised Release Status and Compliance; (6) Criminal Activity while under Supervision; (7) History/Charge Involving Violence/Domestic Violence; (8) Pattern of Similar Criminal Activity History; (9) Safety Concerns for the Community or a Specific Individual; and (10) Criminal History.

The Pretrial Services Report concludes that Young's appearance and the safety of the community can be reasonably assured with conditions including home incarceration.

The Court finds this factor weighs against release. Although Pretrial Services concludes that Young's appearance and the safety of the community can be reasonably assured through conditions of release, the Court finds that the record presently before it raises concerns regarding Young's ability to comply with those conditions. As discussed above, Young has multiple failures to appear, two convictions for fleeing a police officer, and a history of criminal activity while under supervision. The circumstances surrounding the charged offense and the Government's proffer concerning Young's prior conduct involving firearms also raise concerns regarding the danger he may pose to the community. The Court recognizes that the proposed third-party custodian and GPS monitoring would provide safeguards against nonappearance and further criminal activity. Nevertheless, on the present record, the Court is not persuaded that the proposed conditions of release would reasonably assure Young's appearance and the safety of the community. Accordingly, this factor weighs against release.

## V. CONCLUSION / ORDER

For the reasons set forth above and on the record at the hearing on December 11, 2025,

**IT IS ORDERED** that Defendant's motion to revoke pretrial detention order [ECF No. 20] is **DENIED**.

**SO ORDERED.**

Dated: September 14, 2026

s/Denise Page Hood
Denise Page Hood
United States District Judge