**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

UNITED STATES OF AMERICA,

Plaintiff,

v.

MALACHI YOUNG,

Defendant.

Case No. 25-CR-20628

Honorable Denise Page Hood

______________________________

**ORDER GRANTING DEFENDANT MALACHI YOUNG'S RENEWED MOTION TO REVOKE ORDER OF PRETRIAL DETENTION (ECF No. 42)**

## I. INTRODUCTION

Before the Court is Defendant Malachi Young's renewed motion to revoke order of pretrial detention. (ECF No. 42). The motion is fully briefed. A hearing was held on August 13, 2026, and continued on August 17, 2026. For the reasons set forth below and stated on the record, the motion is GRANTED.

## II. BACKGROUND

On August 4, 2024, a criminal complaint was filed alleging that Defendant Malachi Young ("Defendant" or "Young") knowingly possessed ammunition that had previously traveled in and affected interstate commerce, in violation of Title 18, United States Code, Section 922(g)(1). (ECF No. 1, PageID.8). According to the

criminal complaint, on May 31, 2024, at approximately 1:21 a.m., Detroit Police Department ("DPD") officers responded to a non-fatal shooting. (ECF No. 1, PageID.4). DPD officers were flagged down by the victim ("V1") in the area of Plymouth and Asbury Park in Detroit, Michigan. *Id*. V1 identified herself as an Uber driver and reported that she was going to pick up a rider at 11401 Hubbell Ave. *Id*. When she arrived at the pickup location, it appeared that two unknown males were shooting at each other. *Id*. V1 said shots were coming from a silver SUV, but V1 was unsure of the make or model. *Id*. V1 immediately drove away onto Plymouth Avenue until she located police. *Id*. DPD officers documented seventeen holes in V1's Nissan Rogue caused by suspected gunfire. *Id*. DPD officers also observed a gunshot wound to V1's triceps area. *Id*. V1 was subsequently transported to a hospital for treatment of a gunshot wound. *Id*.

DPD officers responded to 11401 Hubbell to investigate further. During their investigation, DPD evidence technicians located fired cartridge casings ("FCCs") of multiple calibers around 11401 Hubbell. The FCCs found at the scene were: (1) five .223 Remington FCCs; (2) nine 9-millimeter Luger FCCs; and (3) ten 7.62x39 FCCs. (*Id*. at PageID.4-5). While DPD officers were at the hospital with V1, nurses informed them that a second gunshot victim, later identified as Young, had arrived by private transportation shortly before V1. (*Id*. at PageID.5).

On August 11, 2025, Young was arrested for the alleged violation of 18 U.S.C. § 922(g)(1) and appeared before Magistrate Judge Kimberly Altman.[1] (ECF Nos. 3, 10). That same day, the Magistrate Judge ordered the temporary detention of Young and scheduled a detention hearing. (ECF No. 7). On August 13, 2025, the Magistrate Judge presided over Young's detention hearing and issued an order of detention pending trial. (ECF No. 11). The Court found that Young should be detained because the Government had shown "[b]y clear and convincing evidence that no condition or combination of conditions could reasonably assure the safety of the community" and "[b]y a preponderance of the evidence that no condition or combination of conditions of release will reasonably assure the defendant's appearance as required." (ECF No. 11, PageID.21). On August 21, 2025, Young was charged in a one-count indictment alleging that on or about May 31, 2024, knowing that he had been convicted of a crime punishable by imprisonment for a term exceeding one year, Young, knowingly possessed ammunition in violation of 18 U.S.C. § 922(g)(1). (ECF No. 12).

On November 5, 2025, Young filed a motion to dismiss the one-count indictment pursuant to the Second Amendment. (ECF No. 17). On November 6, 2025, Young

[1] During the period between the filing of the complaint in this matter on August 4, 2024, and Young's subsequent arrest on August 11, 2025, he remained in state custody pending prosecution on state charges. A jury acquitted Young of the state charges on August 8, 2025.

filed a motion to suppress Defendant's statements during his custodial interview and a motion to suppress evidence seized during a warrantless search and seizure of Defendant's personal property. (ECF Nos. 18, 19). On November 14, 2025, Young filed a motion to revoke the order of pretrial detention. (ECF No. 20). The Government filed responses in opposition to Young's motion to revoke pretrial detention and motion to dismiss on November 26, 2025. (ECF Nos. 25, 26). On December 10, 2025, the Government filed responses in opposition to Young's motions to suppress. (ECF Nos. 29, 30). On December 11, 2025, after a hearing, the Court denied Young's motion to revoke pretrial detention. An evidentiary hearing on Young's motions to suppress commenced on January 8, 2026. Young filed a supplemental brief in support of his motion to suppress evidence on January 22, 2026, and the Government filed a supplemental response on January 30, 2026. (ECF Nos. 39, 40). The evidentiary hearing continued on February 4, 2026.

On July 23, 2026, Defendant filed the instant renewed motion to revoke pretrial detention. (ECF No. 42). The Government filed a response in opposition. (ECF No. 44). The Court held a hearing on the renewed motion on August 13, 2026, which continued on August 17, 2026. At the continued hearing, the Court granted Young's renewed motion to revoke pretrial detention and stated that a written order would be entered. The Government orally moved to stay the Court's ruling, and the Court denied the motion.

## III. APPLICABLE LAW & ANALYSIS

### a. Bail Reform Act

A defendant should be released pretrial unless a judicial officer determines that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). In determining whether there are conditions of release that will assure the appearance of the defendant or the safety of others, the district court considers four factors: (1) the nature and circumstances of the offense; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g)(1)-(4).

### b. Due Process

The Due Process Clause of the Fifth Amendment provides that "[n]o person shall ... be deprived of life, liberty, or property, without due process of law[.]" Consistent with that clause, "[p]retrial detention violates the Fifth Amendment when it amounts to 'punishment of the detainee.'" *United States v. Watson,* 475 F. App'x 598, 601 (6th Cir. 2012) (quoting *Bell v. Wolfish*, 441 U.S. 520, 535, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979)); *see also United States v. Tawfik*, 852 F. App'x 965, 965 (6th Cir. 2021) ("A lengthy pretrial detention can violate the Due Process Clause of

the Fifth Amendment when it lasts long enough to become punitive."). "Whether a pretrial detention is unconstitutionally excessive is determined on a case-by-case basis." *Watson*, 475 F. App'x at 601 (citation omitted). There are "four factors to be considered in determining if the pretrial detention is unconstitutionally excessive," two of which are part of the initial detention decision — "the gravity of the charges . . . and the strength of the evidence upon which the detention was based." *Id.* The remaining factors are "the length of the detention" and "the prosecution's responsibility for the delay of the trial." *Id.*

In his renewed motion to revoke pretrial detention, Young argues that his continued pretrial detention violates his Fifth Amendment right to due process. (ECF No. 42, PageID.616). He contends that the length of his pretrial detention is excessive and has now become punitive. *Id.*

Accordingly, the Court must evaluate whether continuing Young's detention would be unconstitutionally excessive. *See Watson*, 475 F. App'x at 601.

1. Length of Confinement

First, the "length of pretrial detention is not dispositive, and will, by itself, rarely offend due process." *Watson*, 475 F. App'x at 601 (citations omitted). Here, Young has been detained in federal custody for 12 months. In *Watson*, the defendant had been detained for nearly two years. However, the Sixth Circuit noted that "[c]ourts

have found lesser periods of detention to be a violation of due process, but they have also found lengthier periods that were not in violation of the Fifth Amendment." *Id.* at 601-602 (citations omitted). Therefore, courts should evaluate the other factors "in conjunction with the length of detention" in order to assess whether a violation occurred. *Id*.

Young argues that his pretrial detention is excessive in relation to his likely sentence. (ECF No. 42, PageID.618). He argues that accounting for federal good-time credit, twelve months in custody is approximately equivalent to a fourteen-month federal sentence. *Id*. Young asserts that because the parties estimate that a guilty plea would result in an offense level of 12, Criminal History Category III, and a Guidelines range of 15–21 months, his detention already approaches the low end of the sentence he would likely receive if convicted. *Id*. As such, Young argues that his pretrial detention is nearly at the bottom of his Guidelines range under a guilty plea and therefore he is being punished before receiving the process he is due. *Id*.

In response, the Government argues that twelve months is not constitutionally excessive. (ECF No. 44, PageID.629). The Government argues that the length of detention alone is rarely dispositive and the Sixth Circuit has held that substantially longer periods of pretrial detention did not violate due process. *Id*. (citing *Watson*, 475 F. App'x at 602–03 (two-year detention period did not violate due process);

*United States v. Tawfik*, 852 F. App'x 965, 966 (6th Cir. 2021) (five-year detention "by itself" did not violate due process)).

Additionally, the Government contends that Young's contention that his detention becomes punitive merely because it is approaching the low end of his anticipated 15-to-21-month Guidelines range following a guilty plea is unsupported. (*Id.* at PageID.629–30). The Government argues that *United States v. Mendenhall*, No. 2:23-CR-20651-TGB-APP, 2024 U.S. Dist. LEXIS 231386 (E.D. Mich. Dec. 3, 2024), where the court found that approximately thirteen months of pretrial detention violated due process, is distinguishable from this case. (ECF No. 44, PageID.629-631). The Government argues that, unlike in *Mendenhall*, it has not taken actions that indefinitely postponed Young's trial or created the possibility that his detention would extend significantly beyond his anticipated Guidelines range. (*Id.* at PageID.630).

The Court recognizes that Young's twelve-month detention, standing alone, does not establish a due process violation. *See Watson*, 475 F. App'x at 601–02. The length of detention, however, must be considered "in conjunction with" the other circumstances of the case. *Id.* at 602. As recognized in *Mendenhall*, a key consideration is Young's likely period of incarceration if convicted. *Mendenhall*, 2024 U.S. Dist. LEXIS 231386, at *13–17. The closer the period of pretrial detention gets to the likely term of imprisonment, the greater the danger of a deprivation of

due process. *Id.* at *13. Young asserts that, following a guilty plea, he would face a Guidelines range of 15 to 21 months' imprisonment. (ECF No. 42, PageID.618). Young has already been detained for twelve months, which he contends is approximately equivalent to fourteen months of a federal sentence after accounting for good-time credit. *Id.* Therefore, although twelve months of pretrial detention is not constitutionally excessive merely because of its duration, Young's detention is approaching the low end of the Guidelines range he anticipates he would face following a guilty plea. *Id*. This circumstance weighs in favor of finding that continued detention raises due process concerns.

The Court recognizes that *Mendenhall* involved circumstances that are not present here. In *Mendenhall*, the Government filed a superseding indictment shortly before trial and subsequently filed an interlocutory appeal, resulting in cancellation of the trial date and creating the possibility that the defendant could remain detained beyond the maximum of his anticipated Guidelines range. *Mendenhall*, 2024 U.S. Dist. LEXIS 231386, at *15. No comparable Government action has indefinitely postponed Young's trial. Even so, *Mendenhall* remains instructive because it recognizes that a period of pretrial detention "that exceeds or even approaches the likely sentence" raises due process concerns. *Id.* at *17. Accordingly, although the length of Young's detention does not independently establish a constitutional

violation, its duration in relation to his anticipated Guidelines range weighs in favor of release when considered with the remaining factors.

2. Prosecution's Responsibility for the Delay

Under the second factor, Young argues that the Government bears responsibility for the delay because it waited more than one year after filing the criminal complaint to bring him into federal court and that this delay warrants release on bond. (ECF No. 42, PageID.620). Young asserts that the Government knew that he was being held in state custody pending his state trial but elected to lodge the federal complaint as a detainer rather than bring him into federal court for an initial appearance and appointment of counsel. (*Id*. at PageID.620-621). Young argues that the delay was wholly attributable to the Government and that delay prevented him from defending against the federal charge during that period. (*Id*. at PageID.621).

In response, the Government argues that the delay is attributable principally to Young, not the prosecution. (ECF No. 44, PageID.631). Young stipulated to continuing the trial from October 21, 2025, to January 13, 2026, based on the need for additional defense preparation, and subsequently filed three dispositive motions on November 5 and 6, 2025. *Id*. The Government states that it promptly responded, the Court conducted hearings on December 11, 2025, and February 4, 2026, and the

Parties are awaiting rulings. *Id*. The Government contends that the resulting delays are not attributable to the Government. (*Id*. at PageID.631-632).

The Government also argues that Young's earlier state custody is irrelevant to this federal prosecution and his pretrial detention under the Bail Reform Act. (*Id*. at PageID.632-633). The Government argues that Young cites no authority permitting his earlier state detention to be considered when determining whether his federal pretrial detention has become punitive. (*Id*. at PageID.633).

The Court finds that the Government bears little responsibility for the delay following Young's initial appearance in federal court. Young stipulated to a continuance of the trial date (ECF No. 16) and subsequently filed three substantive motions requiring briefing and hearings. (ECF Nos. 17, 18, 19). The Government timely responded to those motions. Although a substantial period has elapsed while the motions remained under consideration, that delay is not attributable to the prosecution.

The Court also considers Young's argument that the Government is responsible for the approximately one-year delay between the filing of the federal criminal complaint and his initial appearance in federal court. Although *Schreane* addressed delay in the Sixth Amendment context, its discussion of responsibility for delay while a defendant is being prosecuted by another sovereign is instructive here.

*United States v. Schreane*, 331 F.3d 548 (6th Cir. 2003). The Sixth Circuit has recognized that "'[s]imply waiting for another sovereign to finish prosecuting a defendant is without question a valid reason for delay' that weighs in favor of the government." *Id.* at 555 (citation omitted). The Sixth Circuit explained that such delay reflects "the obvious need to allow the defendant to be prosecuted by the State without interference by the federal government." *Id.* at 554. Here, Young remained in state custody while awaiting resolution of the state charges against him. A jury acquitted Young of the state charges on August 8, 2025. Young was arrested on the federal charge three days later, on August 11, 2025, and was indicted on August 21, 2025. Therefore, the Court does not attribute the period during which Young remained in state custody awaiting resolution of the state prosecution to the Government for purposes of the due process analysis. Accordingly, this factor does not weigh in Young's favor.

3. Gravity of the Charge

Young acknowledges that felon in possession of ammunition under 18 U.S.C. § 922(g)(1) is a serious offense carrying a maximum sentence of fifteen years. (ECF No. 42, PageID.619). But he contends that his alleged single possession charge is not a complex case, such as a violent offense or an ongoing conspiracy, for which longer periods of detention may be more tolerable. *Id*. (citing *Barker v. Wingo,* 407 *U.S.* 514*,* 531 (1972)). Young argues that when analyzing pretrial detention under

the Due Process Clause, the Supreme Court has noted that the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge. *Id*. Young further argues that a defendant's Sentencing Guidelines are appropriate to consider when assessing the reasonableness of pretrial detention. *Id*. (citing *Mendenhall,* 2024 U.S. Dist. LEXIS 231386, at *15). Young maintains that holding him in pretrial detention for a period as long as or longer than the applicable sentence violates his due process right to be presumed innocent. (*Id*. at PageID.620).

The Government acknowledges that the charged felon-in-possession offense is not itself classified as a crime of violence but argues that the underlying circumstances are violent. (ECF No. 44, PageID.633). Specifically, the Government argues that Young was involved in a shooting and possessed ammunition allegedly linked to a firearm used in multiple shootings. *Id*. The Government further argues that the significant statutory penalty Young faces weighs in favor of detention. *Id.* (citing *Watson*, 475 F. App'x at 602).

The Court recognizes that Young is charged with a serious felony carrying a statutory maximum sentence of fifteen years. The gravity of the charge, however, must be assessed in light of the conduct actually charged. Young is charged with possessing ammunition as a felon, specifically, one spent .223 Remington casing. Young is not charged, however, with possessing a firearm or with shooting V1. The

circumstances surrounding the recovery of the casing raise concerns, but the Government's assertion that Young participated in the shooting remains based on circumstantial evidence. Further, the charged possession of a spent casing does not itself present the same danger as possession of an operable firearm. Considering the nature of the charged offense, the Court finds that this factor weighs in favor of release.

4. Strength of the Evidence Supporting the Detention Decision

Finally, Young argues that his pending motion to suppress the ammunition discovered among his belongings at the hospital weakens the evidence supporting his detention. (ECF No. 42, PageID.621). He acknowledges that the Court has not yet ruled on the suppression motion and that no evidence has actually been suppressed but argues that the magistrate judge's detention determination occurred before his Fourth Amendment challenges were brought before the Court and litigated. *Id*. Young therefore argues that because the admissibility of evidence against him is now contested, his prolonged pretrial detention should be subjected to greater scrutiny. *Id*. (citing *Mendenhall,* 2024 U.S. Dist. LEXIS 231386, at *22).

The Government argues that the evidence supporting Young's detention remains strong. (ECF No. 44, PageID.633). The Government asserts that Young's pending motion to suppress is irrelevant to this factor because the original detention

decision was not based solely on the ammunition underlying the federal charge. *Id*. Rather, the detention order relied on multiple considerations concerning Young's history, which the Government maintains Young does not dispute. *Id*.

The Court finds that this factor weighs in favor of release. Although the evidence establishes that a spent casing was recovered from Young's belongings and that NIBIN testing generated leads linking the casing to other shootings, the evidence connecting Young to a firearm or to those shootings is circumstantial. The Government has not identified forensic evidence establishing that Young possessed or discharged the firearm associated with the recovered casing. The NIBIN evidence links the casing to a firearm used in other shootings but does not, on its own, establish Young's involvement in those shootings. Accordingly, although the evidence supporting the charged ammunition offense remains substantial, the evidence supporting the dangerousness determination is less direct. This factor therefore weighs in favor of release.

The Court must also consider whether conditions of release can reasonably assure Young's appearance as required and the safety of the community. *See* 18 U.S.C. § 3142(e), (g). In its prior order, the Court found that Young posed a risk of nonappearance based principally on his prior failures to appear and convictions for

fleeing a police officer.[2] The Court also found that the circumstances surrounding the charged offense raised concerns regarding dangerousness. Those concerns have not disappeared. The Bail Reform Act, however, does not require that conditions eliminate all risk. Instead, the Court must determine whether conditions can reasonably assure Young's appearance and the safety of the community.

The Court finds that appropriate conditions can reasonably assure both. Young has strong ties to the community, and his mother is willing to serve as a third-party custodian. Pretrial Services previously concluded that Young's appearance and the safety of the community could be reasonably assured through conditions including home incarceration with GPS monitoring. As such, Pretrial Services will be able to monitor Young's compliance with restrictions on his movement. As discussed above, although the circumstances surrounding the charged offense raise concerns, the evidence connecting Young to a firearm and to the other shootings identified by the Government remains circumstantial. Young is not charged with possessing a firearm or with shooting V1. Young is charged with possessing ammunition as a felon based on the spent casing recovered from his belongings, which does not itself pose the danger associated with an operable firearm. Considering the record as a whole, the

[2] ECF No. 49.

Court finds that the proposed conditions of release can reasonably assure Young's appearance and the safety of the community.

## IV. CONCLUSION / ORDER

For the reasons stated above and on the record at the hearing on August 13, and on August 17, 2026,

**IT IS ORDERED** that Defendant's renewed motion to revoke pretrial detention order (ECF No. 42) is **GRANTED**.

**IT IS FURTHER ORDERED** that for the reasons stated on the record, the Government's oral motion to stay the Court's order granting Defendant's renewed motion to revoke pretrial detention order (ECF No. 42) is **DENIED**.

**SO ORDERED.**

s/Denise Page Hood
Denise Page Hood
United States District Judge

Dated: September 14, 2026